UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOCELYN DOWEY, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>STATE OF MAINE, )<br>)<br>Respondent ) | 2:15-cv-00138-NT |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

In this action, Petitioner Jocelyn Dowey seeks relief pursuant to 28 U.S.C. § 2254. (Petition, ECF Nos. 2, 2-1.)[1] Following a guilty plea in New Hampshire state court, Petitioner was convicted of receiving stolen property and illegal possession of controlled drugs, and after a guilty plea in Maine state court, she was convicted of theft by unauthorized taking. In this case, Petitioner argues (1) that she was subjected to double jeopardy because she served sentences in both New Hampshire and Maine for the same offense; (2) that her bail in Maine was excessive; and (3) that her complaints regarding the consequences of a booking error resulted in threats to transfer her to a facility where contact with her daughter would be difficult. (Petition at 9-11.) Petitioner, who is currently on probation in accordance with the Maine sentence, requests that this Court vacate the Maine sentence and remove two allegedly false warrants from her record. (Petition at 12.)

---

[1] Petitioner initially filed the petition in the First Circuit Court of Appeals as an application to file a second or successive petition. (Application, ECF No. 2.) The First Circuit denied the application as unnecessary because no first petition had yet been filed in this Court. (Judgment, ECF No. 1.) The First Circuit transferred the filing to this Court. (*Id.*) For purposes of this recommended decision, references to Petitioner's section 2254 petition are to the "Brief of Appellant and Appendix" (ECF No. 2-1), which contains a detailed statement of Petitioner's claims.

The State has moved for dismissal on the basis that (1) Petitioner failed to exhaust her remedies in Maine state court, and (2) the claims lack merit. (Response, ECF No. 11 at 5-6.) After a review of the petition and the State's request for dismissal, the recommendation is that the Court grant the State's request and dismiss the matter.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in February 2012 and indicted in May 2012 in Maine state court for theft by unauthorized taking, pursuant to 17-A M.R.S. § 353(B)(1). (*State of Maine v. Dowey*, No. ALFSC-CR-2012-00413 (Me. Super. Ct., Yor. Cty.), Docket Sheet at 1-2.)[2] The indictment alleges that from June 1, 2011, through February 21, 2012, in Kittery, Maine, Petitioner took various pieces of jewelry, valued at more than $10,000, from the victim. (Me. Indictment.) Petitioner entered a not guilty plea at her arraignment in August 2012. (Docket Sheet at 2.)

In February 2013, Petitioner was indicted in New Hampshire state court on three counts of receiving stolen property and on four counts of possession of a controlled drug. (*State of New Hampshire v. Dowey*, No. 218-2012-CR-01197 (N.H. Super. Ct., Rock. Cty.), N.H. Indictments.) The New Hampshire crimes allegedly occurred on or about February 26, 2012. (*Id.*) In October 2013, following Petitioner's guilty pleas, the New Hampshire state court convicted her of the receiving stolen property offenses (R.S. § 637:7) and drug offenses (R.S. § 318-B:2, I). (N.H. Sentencing Docs.) The court sentenced Petitioner to a term of not more than six years nor less than one year on each of the convictions for receiving stolen property, with the terms to be served concurrently. (*Id.*) On each of the drug convictions, the court sentenced Petitioner to a term of

---

[2] Because the state court record was filed in paper form only, and because there is no consecutive pagination of the state court record in its entirety, page references, where necessary, are based on the pagination of the individual documents that comprise the state court record. References in this recommended decision to the "docket sheet" are to the Maine Superior Court docket sheet. (*State of Maine v. Dowey*, No. ALFSC-CR-2012-00413 (Me. Super. Ct., Yor. Cty.).)

not more than four years nor less than two years, all suspended, followed by three years of probation. (*Id.*)

A plea hearing in Maine was scheduled for September 11, 2014. (Docket Sheet at 4.) On August 11, 2014, Petitioner filed a motion to continue the plea hearing, and on August 15, 2014, the court granted the motion to continue.[3] (*Id.*)

On September 11, 2014, in Maine state court, the State filed a motion to revoke bail and a request for an arrest warrant. (*Id.* at 5; State's Request for Warrant of Arrest; Order.) The State explained in its request for an arrest warrant that Petitioner had been approved for parole in New Hampshire with a release date of October 16, 2014, and that a warrant must be issued in order to hold Petitioner upon her return to Maine. Petitioner's counsel did not object to the granting of the arrest warrant. (State's Request for Warrant of Arrest.)

On September 11, 2014, the court set a $10,000 cash bail bond and ordered that an arrest warrant issue "for purposes of detainer and not a bail violation."[4] (Docket Sheet at 5; Order.) The state court recalled the arrest warrant on October 10, 2014, which was prior to Petitioner's release date of October 16, 2014. (Warrant of Arrest – Recall.) Nevertheless, Petitioner's father provided cash bail on October 17, 2014, and the bail bond was filed on October 20, 2014. (Bail Bond; Docket Sheet at 5.)

---

[3] Although the court granted Petitioner's motion to continue the September 11, 2014, plea hearing, Petitioner's counsel sent a letter dated August 30, 2014, to the York County District Attorney's Office, discussing Petitioner's transport to the hearing. (Letter, ECF No. 13-8.) The docket sheet reflects that no hearing was held on September 11, 2014. (Docket Sheet at 4-5.) Petitioner alleges that she should have been transported to Maine for the September 11, 2014, hearing, and that when she did not appear, the court issued a fugitive-from-justice warrant. (Petition at 10.) Petitioner alleges that this warrant remained in effect and was used to transport Petitioner from New Hampshire to Maine on her New Hampshire parole date of October 16, 2014. (*Id.*)

[4] Despite that language in the docket, another docket entry for the same date states that the court ordered a bail violation. (Docket Sheet at 5.) On October 10, 2014, the court recalled the bail violation. (*Id.*)

On December 12, 2014, Petitioner entered a guilty plea in Maine state court to the charge of theft by unauthorized taking. (Docket Sheet at 6.) The court accepted Petitioner's guilty plea and sentenced her to a term of eight years, with all but 18 months suspended, followed by three years of probation. (*Id.*) The court stayed the execution of the sentence to December 29, 2014. (*Id.*) The court dismissed as moot the State's motion to revoke bail. (*Id.* at 7.)

Petitioner reported to the York County Jail on December 29, 2014, to begin serving her Maine sentence. (Petition at 8; Response at 3.) The State explained that a booking error and other errors followed:

> The jail, however, mistakenly put [Petitioner] on an imminently departing transport van to the Maine Correctional Center (MCC) without filling out any intake paperwork. Later, [Petitioner's] probation officer called the jail to check if [Petitioner] had turned herself in. When the jail reported that they had no record of [Petitioner] turning herself in, another warrant was issued for her arrest. When the jail discovered that [Petitioner] was actually at MCC, the warrant was recalled, and [Petitioner] was returned to the jail. The intake officer, however, mistakenly failed to take into account that [Petitioner] had actually commenced her sentence on December 29th, and instead used the date that she had been returned as the commencement date of her sentence. On January 15, 2014, [Petitioner's] husband sent an email to the Investigation Division of the Maine Attorney General's Office to complain about the jail's mistakes. [The] Chief of the Investigation Division . . . . forwarded the email to [the] York County Sheriff . . . for response. On January 21, 2015, [the] Sheriff . . . sent an email to [Petitioner's] husband apologizing for the mistakes and informed him that the mistakes had been rectified.

(Response at 3-4.)[5]

Petitioner's cash bail was released on December 30, 2014, i.e., the day after Petitioner presented herself at the York County Jail to begin her sentence. (Docket Sheet at 7.) On December 31, 2014, Petitioner's father filed a notice of appeal on Petitioner's behalf. (Docket Sheet at 8; Order Dismissing Appeal, *State v. Dowey*, No. Yor-15-5 (Me. Jan. 9. 2015).)

---

[5] Petitioner asserts that the reference to her husband was incorrect; rather, it was her father who had complained about the jail's mistakes. (Reply, ECF No. 13 at 3.) Based on Petitioner's assertion, this recommended decision refers to this person as Petitioner's father.

4

On January 6, 2015, the State filed a motion (1) to decrease the amount of jail time in Petitioner's sentence from eighteen months to six months; and (2) to strike the portion of the sentence stating that it was to be served concurrently with the New Hampshire sentence. (Docket Sheet at 8; State's Motion to Correct Sentence.) The State represented that counsel for Petitioner had no objection to the motion. (State's Motion to Correct Sentence.)

The court granted the motion and reduced the sentence as requested. (Docket Sheet at 8; Order; Amended Judgment.) As corrected, the sentence was eight years all but six months suspended, followed by three years of probation.

On January 9, 2015, the Law Court dismissed the appeal because it was not filed by Petitioner nor by an attorney for Petitioner; the Law Court made its decision retroactive to December 31, 2014, thus validating the Superior Court's decision to grant the sentence correction. (Order Dismissing Appeal.)

## II.  DISCUSSION

### A. Legal Standard

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Dismissal of a petition is appropriate at any time if it is evident that the petitioner has no basis for relief. When considering whether an evidentiary hearing is needed, the court "must [first] consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Teti v. Bender*, 507 F.3d 50, 61 (1st Cir. 2007) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). A section 2254 petition may not be granted unless the applicant first exhausts all state court remedies, unless there is no available or

effective state court remedy. 28 U.S.C. § 2254(b)(1), (c). The federal court may deny unexhausted claims on the merits, but may not grant habeas relief on unexhausted claims unless the state has expressly waived the exhaustion requirement. *Id.* § 2254(b)(2), (3).

### B. Claim of Double Jeopardy

Petitioner argues that she has been subjected to double jeopardy because she was prosecuted in two states for the same offense. (Petition at 9.) Petitioner additionally argues that "when New Hampshire and Maine use dual sovereignty in a case that would not be prosecuted under federal '*Petite*' policy they are providing less protection from double jeopardy than the federal government." (*Id.*) Petitioner cites *Petite v. United States*, 361 U.S. 529 (1960) (per curiam), in which, as the First Circuit noted, the Supreme Court vacated a conviction at the Government's request because the prosecution of the offense "contravened internal Justice Department policy forbidding multiple prosecutions for the same criminal conduct." *United States v. Gary*, 74 F.3d 304, 313 (1st Cir. 1996). (Petition at 5.)

Because Petitioner did not seek state court review of her claim of double jeopardy, the claim is technically exhausted, but procedurally defaulted. *See Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (holding that "if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted" but "procedurally defaulted").[6]

---

[6] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v Carrier*, 477 U.S. 478, 485, 496 (1986) (citation omitted)). On a claim that the cause of the procedural default was ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding

Although Petitioner does not assert any cause for her failure to exhaust her state court remedies, had she attempted to excuse her failure to exhaust, she would not prevail because Petitioner's underlying double jeopardy claim lacks merit.[7] The Fifth Amendment provides that no person shall "be subject for the same [offense] to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Assuming, for the sake of argument, that Petitioner's Maine offense of theft by unauthorized taking and her New Hampshire offense of receiving stolen property would be considered the same offense had they been prosecuted under the laws of a single state, double jeopardy does not apply due to the dual sovereign doctrine, under which "successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy clause." *Heath v. Alabama*, 474 U.S. 82, 88 (1985).

As to Petitioner's contention that she is entitled to relief based on the United States Department of Justice "*Petite* policy," the First Circuit has noted that the policy does not confer rights on criminal defendants: "The Justice Department's so-called '*Petite* policy,' which guards against various dual or subsequent prosecutions, does not help [the defendant-appellant] given our repeated holding that the policy 'does not confer substantive rights on criminal defendants.'" *United States v. Meade*, 110 F.3d 190, 201 n.20 (1st Cir. 1997) (quoting *Gary*, 74 F.3d at 313). Petitioner, therefore, cannot rely upon the Justice Department's *Petite* policy to support her claim for relief.

---

that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

[7] Section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [the petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.")

### C. Claim of Excessive Bail

Petitioner asserts that she was subject to excessive bail in violation of the Eighth Amendment, which provides that "[e]xcessive bail shall not be required." U.S. Const. amend. VIII. The State argues that the claim is moot because Petitioner failed to move in state court to modify the bail amount, and because Petitioner, at the time she filed her section 2254 petition, was in custody pursuant to a sentence rather than pursuant to a bail order. (Response at 6-7.)

Claims regarding pre-conviction bail are not cognizable under section 2254, which applies only to persons "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).[8] Petitioner is not in custody due to a pre-conviction bail bond; rather, she is in custody because she is serving a sentence following her conviction. Because Petitioner's current restraint is not related to the pre-conviction bail bond, she has no habeas claim regarding her pre-conviction bail.[9]

Petitioner also asks this Court to "direct the York County Superior Court to remove two false warrants from the record." (Petition at 12.) Petitioner's claim is not cognizable, not only because it relates to pre-conviction bail, but also because section 2254 does not grant this Court the authority to direct a state court to alter Petitioner's state court record. Section 2254 authorizes the federal court to invalidate a judgment that authorizes custody, if the petitioner is entitled to relief (which Petitioner here is not), but section 2254 does not authorize other relief. Furthermore, Petitioner's allegation of two false warrants is not supported by the record. The record reflects that only one arrest warrant was issued, that the warrant was only for the purpose of detainer, and

---

[8] A petitioner who has "fully served the incarcerative portion" of a sentence but remains on probation is "in custody for federal habeas purposes." *Cronin v. Comm'r of Probation*, 783 F.3d 47, 50 (1st Cir. 2015).

[9] If Petitioner is asserting a claim regarding a property interest (i.e., money), rather than a claim regarding her custody pursuant to the sentence, such a claim fails because, by its terms, section 2254(a) applies only to claims relating to the right to be released from custody; it does not apply to Petitioner's other interests such as a monetary account or other property.

that the warrant was recalled before it was executed. (Docket Sheet at 5.) Petitioner's contention that she was transferred to Maine on a fugitive from justice warrant (Petition at 10) is thus not supported by the record.

### D. Claim of Unusual Punishment

Petitioner claims that she has been subjected to "unusual punishment." (Petition at 11.) The Court interprets Petitioner's allegation as her contention that the State violated the Eighth Amendment's prohibition against "cruel and unusual punishments." U.S. Const. amend VIII. Specifically, Petitioner alleges that an officer "generated a false warrant for arrest" after the York County Jail mistakenly failed to book Petitioner when she self-presented to begin her sentence on December 29, 2014. (Petition at 11.) Petitioner asserts that the jail increased her risk classification based on the erroneous information that she had not self-reported to start her sentence, and that the jail later ignored the time she had served at the Maine Correctional Center. (*Id.*) Petitioner acknowledges that the jail subsequently corrected the errors. (*Id.*) The record does not reflect that the state court issued a warrant as a result of the errors.[10] Because the record does not support Petitioner's contention that a false arrest warrant issued after she self-reported, Petitioner's claim fails even assuming that the issuance of a warrant could support a "cruel and unusual punishment" claim.

Petitioner also contends that as a result of her complaints to the York County Jail, someone threatened to transfer her to another facility. Petitioner does not allege that she was transferred, and, in fact, Petitioner was not incarcerated, but rather was on probation, as of the date on which she signed the section 2254 petition. (Response at 7; Reply, ECF No. 13 at 4.) The factual record

---

[10] The docket sheet indicates that the cash bail bond that had been in effect since October 17, 2014, was released on December 30, 2014, and that Petitioner was in custody when the bail bond was released. (Docket Sheet at 7.)

9

thus would not support any claim that is based on the transfer of Petitioner from one facility to another. Just as significantly, a claim based on the location of custody is not cognizable in a habeas action. *See Pischke v. Litscher,* 178 F.3d 497, 499–500 (7th Cir. 1999) (holding that a habeas corpus petition cannot be used to challenge a prisoner's location of custody).

### III.    CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend that the Court dismiss the petition for habeas relief under 28 U.S.C. section 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 15th day of September, 2015.